Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: CR19-5010 |
| Plaintiff, | ) | |
| vs. | ) | Washington Supreme Court Letter and Government's Supplemental Sentencing Memo in US v Roger Stoner |
| BILAL H. WILLIS. | ) | |
| Defendant | ) | |

Respectfully submitted,

*/s/ James B. Feldman*
James B. Feldman
Attorney for Defendant

Dated: September 25, 2020

Supplemental Materials
US Bilal H. Willis

James B. Feldman, P.S.C.
Attorney at Law
4947 N. Pearl Street
Ruston, WA 98407
(253) 759-4555

# The Supreme Court
## State of Washington



June 4, 2020

Dear Members of the Judiciary and the Legal Community:

We are compelled by recent events to join other state supreme courts around the nation in addressing our legal community.

The devaluation and degradation of black lives is not a recent event. It is a persistent and systemic injustice that predates this nation's founding. But recent events have brought to the forefront of our collective consciousness a painful fact that is, for too many of our citizens, common knowledge: the injustices faced by black Americans are not relics of the past. We continue to see racialized policing and the overrepresentation of black Americans in every stage of our criminal and juvenile justice systems. Our institutions remain affected by the vestiges of slavery: Jim Crow laws that were never dismantled and racist court decisions that were never disavowed.

The legal community must recognize that we all bear responsibility for this on-going injustice, and that we are capable of taking steps to address it, if only we have the courage and the will. The injustice still plaguing our country has its roots in the individual and collective actions of many, and it cannot be addressed without the individual and collective actions of us all.

As judges, we must recognize the role we have played in devaluing black lives. This very court once held that a cemetery could lawfully deny grieving black parents the right to bury their infant. We cannot undo this wrong—but we can recognize our ability to do better in the future. We can develop a greater awareness of our own conscious and unconscious biases in order to make just decisions in individual cases, and we can administer justice and support court rules in a way that brings greater racial justice to our system as a whole.

As lawyers and members of the bar, we must recognize the harms that are caused when meritorious claims go unaddressed due to systemic inequities or the lack of financial, personal, or systemic support. And we must also recognize that this is not how a *justice* system must operate. Too often in the legal profession, we feel bound by tradition and the way things have "always" been. We must remember that even the most venerable precedent must be struck down when it is incorrect and harmful. The systemic oppression of black Americans is not merely incorrect and harmful; it is shameful and deadly.

Finally, as individuals, we must recognize that systemic racial injustice against black Americans is not an omnipresent specter that will inevitably persist. It is the collective product of each of our individual actions—every action, every day. It is only by carefully reflecting on our actions, taking individual responsibility for them, and constantly striving for better that we can address the shameful legacy we inherit. We call on every member of our legal community to reflect on this moment and ask ourselves how we may work together to eradicate racism.

As we lean in to do this hard and necessary work, may we also remember to support our black colleagues by lifting their voices. Listening to and acknowledging their experiences will enrich and inform our shared cause of dismantling systemic racism.

We go by the title of "Justice" and we reaffirm our deepest level of commitment to achieving justice by ending racism. We urge you to join us in these efforts. This is our moral imperative.

Sincerely,

Debra L. Stephens,
Chief Justice

Charles W. Johnson,
Justice

Barbara A. Madsen,
Justice

Susan Owens, Justice

Steven C. González,
Justice

Sheryl Gordon McCloud,
Justice

Mary I. Yu, Justice

Raquel Montoya-Lewis,
Justice

G. Helen Whitener, Justice

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ROGER J. STONE, JR.,**<br><br>Defendant. | **Criminal No. 19-cr-18-ABJ** |

## GOVERNMENT'S SUPPLEMENTAL AND AMENDED SENTENCING MEMORANDUM

The United States of America, by and through the United States Attorney for the District of Columbia, hereby submits this supplemental and amended memorandum in connection with the sentencing of Roger J. Stone ("the defendant") scheduled for February 20, 2020.

## INTRODUCTION

The prior filing submitted by the United States on February 10, 2020 (Gov. Sent. Memo. ECF No. 279) does not accurately reflect the Department of Justice's position on what would be a reasonable sentence in this matter. While it remains the position of the United States that a sentence of incarceration is warranted here, the government respectfully submits that the range of 87 to 108 months presented as the applicable advisory Guidelines range would not be appropriate or serve the interests of justice in this case.

It is well established that the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935). This axiom does not simply apply to the process of bringing charges or securing a conviction—it also "must necessarily extend" to the point where a prosecutor advocates for a particular

sentence. *See United States v. Shanahan*, 574 F.2d 1228, 1231 (5th Cir. 1978) (reviewing sentencing conduct of prosecutor). Applying that principle here, to the specific facts of this case, the government respectfully submits that a sentence of incarceration far less than 87 to 108 months' imprisonment would be reasonable under the circumstances. The government ultimately defers to the Court as to the specific sentence to be imposed.

## DISCUSSION

The starting point in the sentencing analysis is a calculation of the defendant's applicable advisory Guidelines range. Here, as set forth in the government's initial submission, the defendant's total offense level is arguably 29 and his criminal history category is I, which would result in an advisory Guidelines range of 87 to 108 months. Notably, however, the Sentencing Guidelines enhancements in this case—while perhaps technically applicable— more than double the defendant's total offense level and, as a result, disproportionately escalate the defendant's sentencing exposure to an offense level of 29, which typically applies in cases involving violent offenses, such as armed robbery, not obstruction cases. *Cf.* U.S.S.G. § 2B3.1(a)-(b). As explained below, removing these enhancements would have a significant effect on the defendant's Guidelines range. For example, if the Court were not to apply the eight-level enhancement for threatening a witness with physical injury, it would result in the defendant receiving an advisory Guidelines range of 37 to 46 months, which as explained below is more in line with the typical sentences imposed in obstruction cases. Accordingly, it would be reasonable for the Court to conclude that the Guidelines range as calculated is unduly high on the facts of this case.

After calculating the Guidelines, the Court next turns to the statutory sentencing factors. Title 18 of the United States Code Section 3553(a) states that a sentencing court should "impose

2

a sentence sufficient, but not greater than necessary" to achieve the statutory goals of sentencing. In doing so, Section 3553(a) delineates several factors that the court must consider when imposing a sentence, "and the sentencing range . . . as set forth in the Guidelines" is but one of those factors. As the United States Supreme Court has stated, while a sentencing court must "give respectful consideration to the Guidelines, it is well-settled that *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." *Kimbrough v. United States*, 522 U.S. 85, 101 (2007). In fact, the Supreme Court has stated that a sentencing court "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007).

Section 3553(a) also directs the Court to consider, among other criteria, the "nature and circumstances of the offense," the "need to afford adequate deterrence to criminal conduct," and "the need to avoid unwarranted sentencing disparities." Here, there are several facts and circumstances supporting the imposition of a sentence below 87 to 108 months' imprisonment.

*First*, as noted above, the most serious sentencing enhancement in this case—the eight-level enhancement under Section 2J1.2(b)(1)(B) for "threatening to cause physical injury"—has been disputed by the victim of that threat, Randy Credico, who asserts that he did not perceive a genuine threat from the defendant but rather stated that "I never in any way felt that Stone himself posed a direct physical threat to me or my dog." (ECF No. 273). While Mr. Credico's subjective beliefs are not dispositive as to this enhancement, the Court may consider them when assessing the impact of applying the enhancement – particularly given the significant impact that the enhancement has on the defendant's total Guidelines range.

*Second*, the two-level enhancement for obstruction of justice (§ 3C1.1) overlaps to a degree with the offense conduct in this case. Moreover, it is unclear to what extent the

3

defendant's obstructive conduct actually prejudiced the government at trial.

***Third***, the Court must "avoid unwarranted sentencing disparities." *See* 18 U.S.C. § 3553(a)(6). In its prior filing, the Government directed the Court's attention to a non-exhaustive list of witness tampering, false statement, and obstruction of justice cases that resulted in sentences of thirty months (*Libby*), thirteen months (*Manafort*), six months (*Lavelle*), twelve months (*Hansen*), and thirty-five months (*Solofa*). While these cases involved lesser offense conduct, the sentences imposed constituted a fraction of the penalty suggested by the advisory Guidelines in this case.

***Finally***, the Court also should consider the defendant's advanced age, health, personal circumstances, and lack of criminal history in fashioning an appropriate sentence. As noted above, a sentence of 87 to 108 months more typically has been imposed for defendants who have higher criminal history categories or who obstructed justice as part of a violent criminal organization. *See, e.g., United States v. Bender*, 927 F.3d 1031 (8th Cir. 2019) (affirming eight-level enhancement for defendant involved in a "gang war" in Minneapolis who instructed a friend to give two fellow gang members the "green light" to "smash" cooperating witnesses); *United States v. Denham*, 436 F. App'x 627 (6th Cir. 2011); *United States v. Salazar*, 542 F.3d 139 (5th Cir. 2008) (affirming eight-level enhancement for defendant who threatened to rape and kill the wife of a cooperating witness in a drug distribution conspiracy prosecution).

## CONCLUSION

The defendant committed serious offenses and deserves a sentence of incarceration that is "sufficient, but not greater than necessary" to satisfy the factors set forth in Section 3553(a). Based on the facts known to the government, a sentence of between 87 to 108 months' imprisonment, however, could be considered excessive and unwarranted under the

circumstances. Ultimately, the government defers to the Court as to what specific sentence is appropriate under the facts and circumstances of this case.

>Respectfully submitted,
>
>TIMOTHY J. SHEA
>UNITED STATES ATTORNEY
>
>By: /s/    *John Crabb Jr.*
>Assistant United States Attorney
>Acting Chief, Criminal Division
>N.Y. Bar No. 2367670
>United States Attorney's Office
>555 4th Street, N.W.
>Washington, D.C. 20530
>(202) 252-1794
>john.d.crabb@usdoj.gov

| | |
|---|---|
| 1 | |
| 2 | **CERTIFICATE OF SERVICE** |
| 3 | |
| 4 | I hereby certify that on September 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants in this cause. |
| 5 | |

*/s/ James B. Feldman*
James B. Feldman, P.S.C.
Attorney at Law
4947 N. Pearl Street
Ruston, WA 98407
253-759-4555
james@jamesfeldmanlaw.com

CERTIFICATE OF SERVICE

JAMES B. FELDMAN, P.S.C.
Attorney at Law
4947 N. Pearl Street
Ruston, WA 98407
(253) 759-4555